# Exhibit 5

CERTIFIED TRANSLATION

# H.D. 20 March 1974 in case I 86/1973

Hotel owner *Erik Gram-Sørensen* (Attorney Bent Nielsen, Aarhus) vs. merchants *Poul Hartvig Andersen* and *Jørgen Ingemann Laustsen* (Attorney Hans Fischer-Møller).

Retention of title in slot machine admitted even though the buyer had sold the machine to the person intended by the seller to rent the machine.

## (Main summary)

A, who was engaged in the business of selling and renting slot machines, sold to B, who stated that he was engaged in setting up machines, a slot machine on hire-purchase terms with the usual retention of title. B sold the machine to hotel owner C and received the purchase price without settling with A. Assuming that A had retained valid title in relation to B and that in connection with the delivery of the machine to B there had been no circumstances that could lead A to suspect that B would resell the machine. Since A had not subsequently forfeited the right to claim retention of title against C, possession proceedings with C requested by A were proceeded with.[1]

# District Court

## Grenå Enforcement Court, ruling of 23 June 1972.

In the present proceedings, the merchants P. Andersen and J. I. Laustsen, Højbjerg, Denmark, have submitted an application against hotel owner Erik Gram-Sørensen, Ebeltoft, Denmark, to be placed in possession of a Bally "Firedance" (FD) slot machine no. 524, sold by them in a contract of sale of 7 April 1971 with retention of title on hire-purchase terms to engineer Ejvind Kodahl, Silkeborg, Denmark, for which the latter has only paid the down payment and three of twelve stipulated instalments, meaning that an amount is due which during the first meeting in the proceedings was calculated at DKK 9,409, to which should be added two meeting fees of DKK 250, i.e. a total of DKK 9,659.

The defendant has claimed that the proceedings not be proceeded with, as he has bought the machine from Kodahl in good faith in the beginning of March 1971 and had it delivered a few days later and has paid it in full using two bills of exchange discharged on 16 June and 2 September 1971, respectively.

At first, the proceedings were directed against the said Kodahl, who, however, at an Enforcement Court meeting in Aarhus, Denmark on 9 December 1971 admitted having sold the machine to the defendant Gram-Sørensen and received the purchase price and then went abroad. During this Enforcement Court meeting, it was agreed to estimate the value of the machine at DKK 9,000, and this has not later been contested.

It appears that, prior to the purchase, the defendant was presented with a business card written in part in English, from which it could be understood that "CEO Kodahl represented a machine company called "Master International", and he was also shown brochures with different types of machines, and the plaintiffs have not disputed that the defendant acted in good faith or that the latter has paid Kodahl for the machine using bills of exchange.

The plaintiffs have submitted that the machine was delivered to Kodahl on the day of the contract with him, i.e. on 7 April 1971, and that they also acted in good faith.

The defendant has not disputed that Kodahl owes the plaintiffs the stated amount.

The plaintiffs have presented the contract of sale of 7 April 1971. Kodahl does not appear in the contract with a job title. The plaintiffs have also presented an invoice from their supplier stating that on 12 March 1971, the machine was sent to them by furniture transport from Copenhagen to Aarhus. They have also presented statements of bookkeeping and stock records showing that the machine was considered to have been entered into stock on 12 March 1971 and that it was sold to Kodahl on 7 April 1971, that Kodahl on the same day has paid the down payment and issued bills of exchange for the remainder, and that it was settled with their supplier on 14 April 1971.

The defendant has presented an agreement between him and Kodahl dated 7 March 1971. According to this, the defendant has purchased partly the new machine stated in the proceedings and partly a used machine where the defendant also rented a third slot machine and a music box. The machines are not individualised with numbers. The defendant has furthermore presented an invoice of 7 April 1971 from "Master International" regarding the two purchased machines. On this invoice, VAT has been added to the price stated in the agreement. It has not been possible for the defendant to obtain the bills of exchange submitted by him.

It appears that the three machines not included in the proceedings come from the plaintiffs.

The defendant has admitted that the agreement between him and Kodahl which was made orally during negotiations on 7 March 1971 was not signed by Kodahl until later, but he has explained that it was only a few days and that the machines were delivered at the same time. As regards the invoice of 7 April 1971, the defendant has stated that Kodahl delivered it some time after the machines were delivered, stating that VAT was not included in the prices of the agreement, which, however, was denied by the defendant. The statement given by the defendant is entirely supported by the witness, cafeteria manager Bent Nielsen, who is employed by the defendant and who has drawn up the written agreement with Kodahl. The defendant has documented that his financial statements include a gambling income (of DKK 100) already on 28 March 1971.

The plaintiffs have stated that Kodahl had previously purchased individual machines from them, but it was not until 5 April 1971 that a special account was set up for him, as he stated that he would start a gambling arcade in the amusement park "Karolinelund" in Aalborg, Denmark. The used machine that the defendant also purchased was delivered by Kodahl on 16 March 1971 and debited to him on 5 April 1971 by creating the said account. The plaintiffs were aware that the machine at issue in the case had to be set up at the defendant's, as Kodahl had said that he had lent the defendant a considerable amount of money and that by setting up the machine with the defendant on a rental basis, he would get that money back, since they were to share the proceeds equally.

It must be regarded as irrelevant at which date the defendant received the agreement on the purchase signed by Kodahl, and at which date he issued bills of exchange to Kodahl, since those facts are only relevant to a certain clarification of when the defendant is assumed to have received the machine in question in the proceedings. And admittedly, the statement given by the defendant and the witness Bent Nielsen and the information about the gambling income entry could indicate that the delivery of the machine has taken place already in March, i.e. before the plaintiffs have retained title in writing, but the necessary evidence for this cannot be considered to have been produced.

On the other hand, having regard to the fact that Kodahl informed the plaintiffs, on the basis of an unlikely loan transaction, that the machine was to be entrusted to the defendant in connection with the fact that Kodahl had purchased other machines, allegedly to be set up in a gambling arcade, the plaintiffs are found, notwithstanding the fact that they have not had to regard Kodahl as the actual distributor of such machines, however, by not having further examined the accuracy of Kodahl's information to have shown such carelessness that they should not now be able to assert their retention of title against an acquirer in good faith.

The defendant's claim will then be allowed. - - -

# Danish Western High Court

## Judgment of the Western High Court on 3 April 1973 (6th division).

(Funch Jensen, Rørdam, Vork (acting)).

Before the High Court, the appellants, merchants Poul Hartvig Andersen and Jørgen Ingemann Laustsen, have reiterated their first instance claim for proceeding with the possession proceedings, whereas the respondent, hotel owner Erik Gram-Sørensen, has claimed that the order be affirmed and in support of that claim has stated partly that the machine was delivered to Kodahl before 7 April 1971, and that the retention of title is therefore not valid, partly that any retention of title cannot be enforced against the respondent.

The appellant, Andersen, has stated to the High Court that his and Laustsen's enterprise, which employs 14 persons, engages in the sale and rental of slot machines. In 1971, the enterprise sold approx. 400 machines. It is normal for up to about 10 machines to be set up in each place, and it is therefore not unusual for one person to buy several machines to be set up in a restaurant. 90% of the enterprise's sales are made with retention of title. Kodahl informed the appellant, Laustsen, that he had been an engineer at Philips but was now engaged in setting up machines and that he had just bought a villa in Silkeborg with DKK 50,000 in down payment. Prior to the purchase of the machine at issue, Kodahl had purchased only a few machines from the appellants, but about 14 days after 7 April 1971, he bought another approximately 40 machines to be set up in Karolinelund in Aalborg. Kodahl had already on 7 April talked about buying a large number of machines for Karolinelund. These machines were delivered directly to Karolinelund where they were set up. The appellant has presented a booklet stating, under the date 6 April, that work was carried out for 2 1/2 hours with "FD 524". The appellant has also stated that the booklet in question contains

an indication of the workshop hours used for the preparation of machines sold in consignment or otherwise with retention of title, whereas repairs to machines already sold are kept in another book.

According to the information available, there is no sufficient basis for assuming that the slot machine was delivered to Kodahl prior to the preparation of the contract and the payment of the down payment on 7 April 1971, and it is therefore accepted that it has been applied that title has been validly retained in relation to Kodahl.

In view of the fact that slot machines of the kind at issue in the case are normally delivered to be set up on a rental basis and that there are no circumstances surrounding the delivery of the machine to Kodahl that would lead the appellants to suspect that Kodahl would resell the machine, the appellants are not found to have lost the access to enforcing the retention of title against the respondent, and the appellants' claim will therefore be allowed. - - -

The respondent pays the costs of DKK 2,500 to the appellants.

# The Supreme Court of Denmark

## The Supreme Court's judgment.

The judgment delivered in this case by the Western High Court has been appealed to the Supreme Court with the permission of the Danish Ministry of Justice.

Five judges ruled in the case: Trolle, Tamm, Hvidt, Høyrup and Høeg.

Before the Supreme Court, the appellant has claimed affirmation of the ruling given by Grenå Enforcement Court.

The respondents have claimed affirmation of the High Court's judgment.

Additional information has been provided for the Supreme Court.

According to the reasons set out in the judgment, it will be affirmed.

It is found that the appellant should pay DKK 2,000 to the respondent in legal costs before the Supreme Court.

## On these grounds the Court rules that:

*The High Court judgment should be upheld.*

*The appellant, hotel owner Erik Gram-Sørensen, must pay DKK 2,000 in legal costs before the Supreme Court to the respondents, the merchants Poul Hartvig Andersen and Jørgen Ingemann Laustsen.*

*The imposed costs must be paid within 15 days of the delivery of this Supreme Court judgment.*

Cf. U.1967.451/2 H (U1967B.269), vs. Eyben: Formuerettigheder (4th ed.) pp. 269-70, Illum: Ejendomsforbehold p. 67 ff., same: Dansk Tingsret (2nd ed.) p. 215, Torben Jensen: Afbetaling p. 262-72 and Executive Order no. 370/1964 on joint Nordic rules on the acquisition of movable property in good faith (extinctive acquisition of movable property) p. 13.

# THIS IS TO CERTIFY

that the foregoing

**"Judgment"**

is a true and faithful translation of the
attached document
in the Danish language produced to me.

This translation consists of 6 (six) pages, including this page.

In witness whereof I have hereunto set
my hand and affixed my seal of office
this 2nd day of June 2022.



Certified Translator at Aarhus, Denmark

Lea Mathiasen

# H. D. 20. marts 1974 i sag I 86/1973

Hotelejer *Erik Gram-Sørensen* (adv. Bent Nielsen, Århus) mod grossererne *Poul Hartvig Andersen* og *Jørgen Ingemann Laustsen* (adv. Hans Fischer-Møller).

Ejendomsforbehold i spilleautomat anerkendt, selv om køber havde solgt automaten til den, som sælger påregnede skulle have automaten stående som lejer.

## (Hovedresumé)

A, der drev virksomhed med salg og udleje af spilleautomater, solgte til B, der oplyste at være beskæftiget med opstilling af automater, en spilleautomat på afbetaling med sædvanligt ejendomsforbehold. B solgte automaten til hotelejer C og modtog købesummen uden at afregne med A. Antaget, at A havde taget gyldigt ejendomsforbehold i forhold til B, og at der ikke i omstændighederne omkring leveringen af automaten til B havde foreligget forhold, som kunne give A mistanke om, at B ville videresælge automaten. Idet A herefter ikke havde fortabt adgangen til at gøre ejendomsforbehold gældende overfor C, blev en af A begæret indsættelses forretning hos C fremmet. [1]

# Byretten

## Grenå fogedrets kendelse 23. juni 1972.

Under nærværende forretning har grossererne P. Andersen og J. I. Laustsen, Højbjerg, over for hotelejer Erik Gram-Sørensen, Ebeltoft, fremsat begæring om at blive indsat i besiddelse af en Bally »Firedance« (FD)spilleautomat nr. 524, som de ved købekontrakt af 7. april 1971 med ejendomsforbehold har solgt på afbetaling til ingeniør Ejvind Kodahl, Silkeborg, og hvorpå denne kun har erlagt udbetalingen og tre af tolv stipulerede afdrag, således at der skyldes et beløb, der under forretningens første møde er opgjort til 9.409 kr., hvortil kommer to mødesalærer 250 kr., ialt altså 9.659 kr.

Rekvisitus har påstået forretningen nægtet fremme, idet han i god tro har købt maskinen af Kodahl i begyndelsen af marts 1971 og fået leveret den få dage senere og har betalt den fuldtud gen nem to veksler, der er indfriet henholdsvis den 16. juni og 2. september 1971.

Forretningen har først været rettet mod nævnte Kodahl, der imidlertid i et fogedretsmøde i Århus den 9. december 1971 erkendte at have solgt maskinen til rekvisitus Gram-Sørensen og modtaget købesummen, og han er derefter rejst til udlandet. Under dette fogedretsmøde enedes man om at ansætte maskinens værdi til 9.000 kr., og dette er ikke senere anfægtet.

Det fremgår, at rekvisitus inden købet fik forevist et delvis på engelsk affattet visitkort, hvoraf man kunne forstå, at »direktør Kodahl repræsenterede et automatfirma ved navn »Master International «, ligesom han fik forevist brochurer med forskellige automattyper, og rekvirenterne har ikke bestridt god tro hos rekvisitus eller, at denne gennem veksler har betalt for maskinen til Kodahl.

Rekvirenterne har gjort gældende, at maskinen er udleveret til Kodahl på dagen for den med ham oprettede kontrakt, altså den 7. april 1971, og at de på deres side også har været i god tro.

Rekvisitus har ikke bestridt, at rekvirenterne har det opgjorte beløb tilgode hos Kodahl.

Rekvirenterne har fremlagt købekontrakten af 7. april 1971. Kodahl fremtræder ikke heri med stillingsbetegnelse. Rekvirenterne har endvidere forevist faktura fra deres leverandør, hvoraf fremgår, at maskinen den 12. marts 1971 er sendt dem med møbeltransport fra København til Århus. De har endvidere forevist udtog af bogholderi og lagerregnskab, hvoraf fremgår, at maskinen er betragtet som indgået på lager den 12. marts 1971, at den er solgt til Kodahl den 7. april 1971, at Kodahl samme dag har erlagt udbetalingen og udstedt veksler for resten, og at den er afregnet til deres leverandør den 14. april 1971.

Rekvisitus har fremlagt overenskomst mellem ham og, Kodahl, dateret 7. marts 1971. Ved denne har rekvisitus købt dels den under forretningen omhandlede nye maskine, dels en tilsvarende brugt maskine, hvorhos rekvisitus yderligere har lejet en tredje spilleautomat og en music-box. Maskinerne er ikke individualiseret med nummerbetegnelse. Rekvisitus har endvidere fremlagt faktura af 7. april 1971 fra »Master International « vedrørende de to købte maskiner. På denne faktura er til den i overenskomsten angivne pris lagt merværdiafgift. Det har ikke været rekvisitus muligt at fremskaffe de af ham afgivne veksler.

Det fremgår, at også de ikke af forretningen omfattede tre maskiner hidrører fra rekvirenterne.

Rekvisitus har erkendt, at overenskomsten mellem ham og Kodahl, der blev truffet mundtligt under forhandling den 7. marts 1971, først er underskrevet af Kodahl senere, men han har forklaret, at der kun gik nogle få dage, og samtidig blev maskinerne leveret. Om fakturaen af 7. april 1971 har rekvisitus forklaret, at den kom Kodahl med nogen tid efter maskinernes levering, idet han angav, at merværdiafgiften ikke var indbefattet i overenskomstens priser, hvad rekvisitus dog afviste. Den af rekvisitus afgivne forklaring er i det hele støttet af vidnet cafeteriabestyrer Bent Nielsen, der er ansat hos rekvisitus, og som har udfærdiget den skriftlige overenskomst med Kodahl. Rekvisitus har dokumenteret, at der i hans regnskaber indgår en spilleindtægt (på 100 kr.)allerede den 28. marts 1971.

Rekvirenterne har oplyst, at Kodahl tidligere havde købt enkelte maskiner hos dem, men først den 5. april 1971 oprettedes der en særlig konto for ham, idet han da oplyste, at han ville starte et spillelokale i forlystelsesparken »Karolinelund« i Aalborg. Den brugte maskine, som rekvisitus også købte, er leveret Kodahl den 16. marts 1971 og debiteret ham den 5. april 1971 ved oprettelse af fornævnte konto. Rekvirenterne var Klar over, at den i sagen omhandlede maskine skulle opstilles hos rekvisitus, idet Kodahl havde fortalt, at han havde lånt rekvisitus et betydeligt beløb, og at han ved at opstille maskinen hos rekvisitus på lejebasis kunne få disse penge hjem, idet de skulle dele udbyttet lige.

Det må anses for underordnet, på hvilken dato rekvisitus har modtaget den af Kodahl underskrevne overenskomst om købet, og på hvilken dato han har udstedt veksler til Kodahl, idet disse kendsgerninger alene har betydning til en vis belysning af, hvornår rekvisitus kan antages at have modtaget den af forretningen omhandlede maskine. Og ganske vist kunne den af rekvisitus og vidnet Bent Nielsen afgivne forklaring samt oplysningen om spilleindtægtsposteringen tyde på, at lever maskinen har fundet sted allerede i marts, altså forud for, at rekvirenterne har taget skriftligt ejendomsforbehold, men det fornødne bevis herfor kan imidlertid ikke anses ført.

Når på den anden side henses til, at Kodahl under henvisning til en usandsynlig lånetransaktion har oplyst rekvirenterne om, at maskinen skulle overlades rekvisitus, i forbindelse med, at Kodahl iøvrigt har købt flere maskiner angivelig til opstilling i en spillehal, findes rekvirenterne, uanset at de vel ikke har måttet betragte Kodahl som egentlig forhandler af sådanne maskiner, dog ved undladelse af yderligere undersøgelse af rigtigheden af Kodahls oplysninger at have udvist en sådan uforsigtighed, at de ikke nu bør kunne gøre deres ejendomsforbehold gældende over for en godtroende erhverver.

Rekvisiti påstand vil herefter være at tage til følge. - - -

# Vestre Landsret

## Vestre Landsrets dom 3. april 1973 (6. afd.).

(Funch Jensen, Rørdam, Vork (kst.)).

For landsretten har appellanterne, grossererne Poul Hartvig Andersen og Jørgen Ingemann Laustsen, gentaget deres i første instans nedlagte påstand om fremme af indsættelsesforretningen, medens indstævnte, hotelejer Erik Gram-Sørensen, har påståaet kendelsen stadfæstet og til støtte herfor har anført dels, at maskinen er leveret til Kodahl før den 7. april 1971, og at ejendomsforbeholdet derfor ikke er gyldigt, dels at et eventuelt ejendomsforbehold ikke kan gøres gældende overfor indstævnte.

Appellanten Andersen har for landsretten forklaret, at hans og Laustsens firma, der beskæftiger 14 personer, driver virksomhed med salg og udleje af spilleautomater. I 1971 solgte firmaet ialt ca. 400 automater. Det er normalt, at der opstilles indtil ca. 10 automater hvert sted, og det er derfor ikke usædvanligt, at én person køber flere maskiner til opstilling i en restaurant. 90% af firmaets salg foregår med ejendomsforbehold. Kodahl oplyste overfor appellanten Laustsen, at han havde været ingeniør hos Philips, men nu var beskæftiget med opstilling af automater, og at han lige havde købt en villa i Silkeborg med 50.000 kr. i udbetaling. Forud for købet af den i sagen omhandlede maskine havde Kodahl kun købt nogle få maskiner hos appellanterne, men ca. 14 dage efter den 7. april 1971 købte han yderligere ca. 40 automater til opstilling i Karolinelund i Aalborg. Kodahl havde allerede den 7. april talt om at ville købe et større antal maskiner til Karolinelund. Disse maskiner blev leveret direkte til Karolinelund, hvor de blev opstillet. Appellanten har forevist et hæfte, hvori der under datoen 6. april er foretaget indførsel om, at der er arbejdet i 21/2 time med »FD 524«. Appellanten har i tilslutning hertil oplyst, at det pågældende hæfte indeholder

angivelse af de værkstedstimer, der anvendes til klargøring af maskiner, der sælges i konsignation eller iøvrigt med ejendomsforbehold, medens reparationer på allerede solgte maskiner føres i en anden bog.

Der findes efter de foreliggende oplysninger ikke fornødent grundlag for at antage, at spilleautomaten har været udleveret til Kodahl forud for kontraktens oprettelse og udbetalingens erlæggelse den 7. april 1971, og det tiltrædes derfor, at det er lagt til grund, at der er taget et gyldigt ejendomsforbehold i forhold til Kodahl.

Når henses til at automater af den i sagen omhandlede art normalt leveres til opstilling på lejebasis og til, at der ikke i omstændighederne omkring leveringen af automaten til Kodahl findes at have foreligget forhold, som kunne give appellanterne mistanke om, at Kodaltl ville videresælge automaten, findes appellanterne ikke at have fortabt adgangen til at gøre ejendomsforbeholdet gældende overfor indstævnte, og appellanternes påstand vil derfor være at tage til følge. - - -

Sagens omkostninger betaler indstævnte til appellanterne med 2.500 kr.

# Højesteret

## Højesterets dom.

Den i denne sag af Vestre Landsret afsagte dom er med Justitsministeriets tilladelse indanket for Højesteret.

I pådømmelsen har deltaget fem dommere: Trolle, Tamm, Hvidt, Høyrup og Høeg.

For Højesteret har appellanten påstået stadfæstelse af Grenå fogedrets kendelse.

De indstævnte har påstået stadfæstelse af landsrettens dom.

Til brug for Højesteret er der tilvejebragt yderligere oplysninger.

I henhold til de i dommen anførte grunde vil den være at stadfæste.

I sagsomkostninger for Højesteret findes appellanten at burde betale 2.000 kr. til den indstævnte.

## Thi kendes for ret:

*Landsrettens dom bør ved magt at stande.*

*I sagsomkostninger for Højesteret betaler appellanten, hotelejer Erik Gram-Sørensen, 2.000 kr. til de indstævnte, grossererne Poul Hartvig Andersen og Jørgen Ingemann Laustsen.*

*Det idømte at udrede inden 15 dage efter denne højesteretsdoms afsigelse.*

 Jfr. U.1967.451/2 H (U1967B.269), v. Eyben: Formuerettigheder (4. udg.) s. 269-70, Illum: Ejendomsforbehold s. 67 ff., samme: Dansk Tingsret (2. udg.) s. 215, Torben Jensen: Afbetaling s. 262-72 og betænkning nr. 370/1964 om fællesnordiske regler om erhvervelse af løsøre i god tro (ekstinktiv erhvervelse af løsøre) s. 13.