# Exhibit 15

*Part IV – Confrontation*

often shared between several people. Such a fragmentation often occurs in the context of financing structures[82]. Finally, it should be mentioned that the shareholder concept is actualized in connection with changes of ownership.

### 3.3.2.2. The civil law shareholder concept

### A) Generally

The concept of shareholder undoubtedly has great tax law relevance. Capital companies represent a legal fiction that cannot exist without the legal standardization thereof. For this reason, it is of central importance to know the civil law meaning of the shareholder concept.

In the following, the characteristics of the concept is analyzed in the area of company law. It is worth noting that the concept of shareholder in Danish company law has not received significant attention. However, the concept of shareholder is relevant in civil law terms in connection with: (1) the question of whether the shareholder rights can be separated or split and (2) in connection with a change of ownership.[83]

The term "share" is used in the Danish Companies Act with several different meanings. A share is an expression that the holder owns a notional part of the company's equity.[84] The Danish Companies Act uses the term "shareholder" but does not contain any definition thereof.[85] The regulation is instead concentrated on various rights and obligations in the company, the shareholder powers.[86] The rights and obligations of a shareholder can be found partly in the Companies Act,

82. Cf. for example, the finding in *Rasmus Kristian Feldthusen*: Trusts, 2002, p. 267.
83. Cf. *Magnus Aarbakke* in TfR 1993, p. 59 et seq.
84. Cf. about this *Søren Friis Hansen & Jens Valdemar Krechel*: Textbook in Company Law II, 2000, p. 92.
85. Similarly, the term "shareholder" is used in the Danish Private Companies Act, also without further clarification. In the following, only the concept of shareholder is mentioned, but the representations are also assumed to be valid for the concept of shareholder. In terms of accounting, the shareholder relationship is part of the concept of *company participant*, cf. ÅRL appendix 1, A. 6. The term means co-owner of the company, regardless of how the person's relationship with the company and any other co-owners is structured. The person in question must own shares in the company. Such ownership implies in principle that you have a share in the company's equity. It is not sufficient from an accounting point of view to simply hold shares as security (mortgage). Mortgagees or persons who, as a result of a special agreement, have been granted some, but not all, shareholder rights, e.g. the right to vote, do not in principle fall within the concept.
86. Cf. about this *Hugo P. Matre* in NTS 2001. p. 395, where it is stated in note 2 that the author's considerations, despite the basis in Norwegian law, also have an impact on the legal situation in the other Nordic countries, including Denmark. See similarly *Magnus Aarbakke* in TfR 1993, p. 59 et seq.

918

partly in the company's articles of association and any possible shareholder agreement.[87]

A shareholder relationship is established through the company law rules on incorporation and capital increase. As long as the rights are not transferred to other legal entities, there will be no competition between different legal entities as to who is owner of the shares.[88]

A distinction is typically made between administrative (organizational) and financial shareholder rights/powers when describing the characteristics of a shareholder position. The distinction is not clear, as there may be significant financial value in the administrative powers, just as the financial powers have administrative aspects.[89] The distinction is not directly enshrined in statutory law, but can be deduced from ASL § 27.[90]

*Administrative powers* concern the shareholder's influence on the management (administration) of the company. Since shareholders basically only exercise their influence via the general meeting, cf. ASL § 65, para. 1, the administrative powers concern all questions of how the shareholders will exercise their voting rights at the general meeting level of the company.[91] The administrative powers of a share are comprised of the right to attend the general meeting, cf. ASL § 65, the right to speak at the general meeting, cf. ASL § 65, subsection. 2, the right to vote at this general meeting, cf. ASL § 67, the right to attend by proxy or advisor, cf. ASL § 66, para. 1, the right to convene an extraordinary general meeting, cf. ASL § 70, the right to have a specific topic included at the general meeting, cf. ASL § 71, the right to challenge a general meeting resolution made in accordance with ASL § 81, the right to examine, cf. ASL § 86,[92] the right to dissolve the

87.  Cf. *Bent Ramskov*: Internal Corporate Restructuring, 2001, p. 75.
88.  Cf. *Hugo P. Matre* in NTS 2001, p. 400.
89.  Cf. *Magnus Aarbakke* in TfR 1993, p. 60.
90.  See on the distinction between administrative and financial powers: Report no. 540, 1969, p. 78, *Erik Werlauff & Jørgen Nørgaard*: Articles of Association and Shareholder Agreements, 1995, p. 52 et seq., *Bent Ramskov*: Internal Corporate Restructuring, 2001, p. 76 et seq, *Søren Friis Hansen & Jens Valdemar Krenchel*: Textbook in Company Law II, 2000, p. 96, and *Magnus Aarbakke* in TfR 1993, p. 60 et seq. See in general about shareholders' rights *Åse Koll Lunde et al.* in Auditing and Accounting 2003/5, p. 24 et seq.
91.  Cf. *Erik Werlauff & Jørgen Nørgaard*: Articles of Association and Shareholder Agreements, 1995, p. 52.
92.  Precisely this shareholder power, and in particular the concept of shareholder itself, has been the subject of a Norwegian Supreme Court ruling, cf. Rt. 2000, p. 1792 (in re Montell) and it is precisely this judgment that has given rise to the specific interest in the problem in Hugo P. Matre in NTS 2001, p. 395 et seq. The case briefly dealt with

*Part IV – Confrontation*

company, cf. ASL § 119, as well as the right to sue the management for liability, cf. ASL § 144, para. 3.

In addition to the administrative powers, a number of *financial powers* are attached to the individual share. The financial powers can also be defined on the basis of ASL § 27, which gives examples of such financial powers. A shareholder's financial powers can be defined as the right to own or receive a part of the company's assets according to the proportionate size of the shares.[93] Thereafter, the financial rights include all the ways in which the company's funds can be distributed, cf. ASL § 109, including the right to receive dividends on a share, the right to receive proceeds upon the company's liquidation or by a capital reduction, the right to receive issues of shares in the event of a bonus issue, cf. ASL § 29, as well as the pre-emptive right that basically accrues to all shareholders in the event of a capital increase, cf. ASL § 30, subsection 1. It is the basic presumption of company law that all shareholders have equal access to the financial powers, cf. the principle of equality in ASL § 17. A constructive dividend must also be regarded as a financial power, regardless of the tax law consequences.[94]

Finally, there is the right to dispose of the share itself, *the disposition powers.* These powers follow from the ownership of the share itself.[95] Conceptually, this is not an exercise of a right in the company. With respect to this, the shareholder basically has the right to sell, mortgage, transfer the right to use, enter into dividend agreements and voting rights agreements regarding the share, cf. ASL § 18.[96] With regard to mortgaging

---

the question of whether a shareholder who had had his shares written off by reduction of the share capital, and who is thus in principle no longer a shareholder, can demand an examination. The majority of the Supreme Court concluded that examination could be required in such a situation. The background to the outcome of the judgment is found in the consideration of the minority shareholders, as the court found that they had to be protected for real reasons. Technically, this was a broad interpretation of the concept of shareholder, as the examination provision in Norwegian law directly prescribes that only shareholders have this right. See in detail about the judgment *Hugo P. Matre* in NTS 2001, p. 396 et seq, where it is stated that the outcome of the case had exclusive meaning in relation to the institution of examination, and the treatment of one shareholder could not extend to other shareholder powers in the company.

93.   Cf. *Erik Werlauff & Jørgen Nørgaard*: Articles of Association and Shareholder Agreements, 1995, p.53.
94.   Cf. *Erik Werlauff & Jørgen Nørgaard*: Articles of Association and Shareholder Agreements, 1995, s.54.
95.   Cf. *Magnus Aarbakke* in TfR 1993, p. 61 et seq. This author considers property rights to be an financial power.
96.   Cf. *Erik Werlauff & Jørgen Nørgaard*: Articles of Association and Shareholder Agreements, 1995, p. 54.

920

*Ch. 21: Financing Dispositions*

in particular, it should be noted that the administrative rights attached to the share remain with the mortgagor, unless otherwise agreed.[97] A valid agreement can be made that the mortgagee can exercise the voting rights on the mortgaged shares until the mortgagee is satisfied.[98]

The characteristics of the civil law concept of shareholder thus result indirectly, as a shareholder can be said to be the one who exercises the rights and obligations attached to one or more shares. Since the right of disposal over the shareholder powers lies with the owner of the shares, the description can be simplified.[99] *Thus, a shareholder is the one who has the ownership of one or more shares.*[100] *However, the reality is that it is not always the owner of a share who can exercise a shareholder power.* It is important to recognize that there is not necessarily a convergence between the ownership of a share and the exercise of a shareholder power.[101] In this way, the shareholder concept used differs

---

97.  See here UfR 1968, 766 H, regarding voting rights.
98.  Cf. about this *Søren Friis Hansen & Jens Valdemar Krenchel*: Textbook in Company Law II, p. 96.
99.  Cf. *Søren Friis Hansen & Jens Valdemar Krenchel*: Textbook in Company Law II, 2000, p. 96.
100. Cf. *Hugo P. Matre* in NTS 2001, p. 396.
101. Cf. *Hugo P. Matre* cited above, but contrast *Magnus Aarbakke* in TfR 1993, p. 59 et seq (p. 61), who instead considers the ownership of the share to be one of the economic rights attached to a share. In line with the former author, it is similarly more appropriate to use property rights as a collective term for the disposal of all rights and obligations attached to a share and which have not been transferred to others or limited in any other way. The result is also achieved on the basis of an interpretation of the rule in Norwegian ASL corresponding to ASL § 27. It is noted in this connection that the provision, despite its wording, does not give rise to a general concept with regard to the concept of shareholder, cf. *Hugo P. Matre* in NTS 2001, p. 402, which, however, apparently turns against the interpretation of *Magnus Aarbakke. et al.*: The Norwegian Public Limited Companies Act, 2000, p. 864. The author finds that the provision on the one hand can be interpreted in such a way that the administrative rights are the decisive ones in deciding who is a shareholder. On the other hand, the provision can be interpreted in such a way that the economic powers are decisive. This assumption is based on an inclusion of practice from the Norwegian Supreme Court. In tax cases, the court has thus, in assessing whether the ownership has any reality for the passive shareholder, not emphasized the administrative rights, but instead emphasized the handling of dividends in assessing whether the ownership has been pro forma, cf. Rt 1998, p. 1771, and on this *Hugo P. Matre* in Auditing and Accounting 1999/5, p. 38. Against this background, Matre concludes that the Supreme Court's use of the shareholder concept raises the question of whether the placement of the administrative powers can be regarded as an appropriate criterion in a general company law definition. Notwithstanding this, the author, cited above, P. 403, finds that it follows from the structure of the Companies Act that the concept cannot simply be determined on the basis of a single provision. As there is no legal definition, the concept must, in the author's opinion, be determined specifically from situation to situation. The point of view can be summarized in such a way that it must be assessed specifically who has the individual rights and duties. According to this assessment, the rights holder will be a shareholder within the meaning of the current provision, to the extent that the term is used herein. Alternatively, the person can be equated with a shareholder, without being a shareholder himself.

*Part IV – Confrontation*

from the understanding on which *Hugo P. Matre* is based.[102] This author has thus argued that the separate regulation of the various shareholder powers under company law must mean that the concept of shareholder in civil law assumes a *functional character*. In principle, it can be said that the conditions for being able to exercise the shareholder powers must be able to be determined on the basis of the regulation of the current question. The shareholder concept can thus be said to have different characteristics in different relations.

A shareholder is not necessarily the one who is able to exercise a shareholder power. As mentioned, shareholder rights can to a large extent be split from a share, and it may be relevant to distinguish between the rights connected to the individual share and the rights that can actually be exercised by the shareholder who owns the share.[103] Similarly, in certain respects the ownership is not automatically sufficient to trigger a specific shareholder power, cf. for example the coup rule in ASL § 67, subsection. 2. The shareholder must be the owner of the share, and this owner will typically hold a number of key administrative powers.[104] It must also have the presumption against it that a completely linguistically identical concept intradisciplinary in company law must be assigned different characteristics.

### B) Splitting of shareholder powers

In both civil and tax law, it is of great significance whether shareholder powers can be divided between several parties. There may be legitimate needs behind such a desire.[105] In the event of a split of shareholder rights

---

102.  Cf. NTS 2001, p. 395 et seq.
103.  It can thus happen that a shareholder is barred from exercising one or more of the rights attached to his shares. This applies, for example, if rules on voting ceilings have been agreed in the articles of association. However, this does not mean that the owner in such specific situations must be deprived of the shareholder title.
104.  To this end, the question can be asked whether a share buyer who is not listed in the share register, cf. ASL § 27 and consequently cannot exercise the administrative powers, but can still exercise the financial powers, may not then be considered a shareholder until the administrative rights can be exercised. I agree in principle that this must clearly be a shareholder position prior to the right to exercise the administrative rights. In my view, this simply does not support the view of the relativity of the concept of shareholder. On the other hand, it is again merely a matter of the fact that conditions for exercising the powers vary.
105.  Norwegian law previously contained an actual ban on the splitting of rights. The ban slipped out of the legislation in 1976, cf. *Magnus Aarbakke* in TfR 1993, p. 64.

*Del IV – Konfrontation*

ofte deles mellem flere personer. En sådan opsplitning forekommer ofte i forbindelse med finansieringsstrukturer[82]. Endelig kan det nævnes, at aktionærbegrebet aktualiseres i forbindelse med ejerskifter.

### 3.3.2.2. Det civilretlige aktionærbegreb

#### A) Generelt

Aktionærbegrebet har utvivlsomt stor skatteretlig relevans. Kapitalselskaber udgør en juridisk fiktion, der ikke kan bestå uden den retlige normering heraf. Af denne årsag er det af central betydning at kende til den civilretlige betydning af aktionærbegrebet.

I det følgende analyseres begrebets indhold på selskabsrettens område. Det er værd at forudskikke, at aktionærbegrebet i dansk selskabsret ikke har haft nævneværdig bevågenhed. Aktionærbegrebet har dog relevans i civilretlig henseende i forbindelse med: (1) spørgsmålet om, hvorvidt aktionærrettighederne kan udspaltes eller splittes samt (2) i forbindelse med ejerskifte[83].

Begrebet »aktie« anvendes i aktieselskabsloven i flere forskellige betydninger. En aktie er udtryk for, at indehaveren ejer en ideel andel af selskabets egenkapital[84]. Aktieselskabsloven benytter begrebet »aktionær« men indeholder ikke nogen definition heraf[85]. Reguleringen er i stedet koncentreret om forskellige rettigheder og pligter i selskabet – aktionærbeføjelserne[86]. En aktionærs rettigheder og pligter fremgår dels

---

82. Jf. eksempelvis konstateringen hos *Rasmus Kristian Feldthusen*: Trusts, 2002, s. 267.
83. Jf. *Magnus Aarbakke* i TfR 1993, s. 59 ff.
84. Jf. herom *Søren Friis Hansen & Jens Valdemar Krechel*: Lærebog i selskabsret II, 2000, s. 92.
85. Tilsvarende benyttes begrebet »anpartshaver« i anpartsselskabsloven, tillige uden nærmere afklaring heraf. I det følgende omtales alene aktionærbegrebet, men udredningerne antages tillige at have gyldighed for anpartshaverbegrebet. I regnskabsmæssig henseende er aktionærforholdet en del af begrebet *virksomhedsdeltager*, jf. ÅRL bilag 1, A. 6. Udtrykket betyder medejer af virksomheden, uanset hvorledes den pågældendes forhold til virksomheden og til eventuelle andre medejere er struktureret. Den pågældende skal eje kapitalandele i virksomheden. Et sådant ejerskab indebærer principielt, at man har del i virksomhedens egenkapital. Det er ikke i regnskabsmæssig henseende tilstrækkeligt blot at besidde aktier til sikkerhed (pant). Panthavere eller personer, der som følge af særlig aftale er tildelt nogle, men ikke alle aktionærbeføjelser, f.eks. stemmeretten, hører principielt ikke under begrebet.
86. Jf. herom *Hugo P. Matre* i NTS 2001. s. 395, hvor det i note 2 anføres, at forfatterens betragtninger trods udgangspunktet i norsk ret tillige har betydning for retstilstanden i de øvrige nordiske lande, herunder Danmark. Se tilsvarende *Magnus Aarbakke* i TfR 1993, s. 59 ff.

918

af selskabslovene, dels af selskabets vedtægter samt en eventuel aktionæroverenskomst[87].

Et aktionærforhold etableres gennem de selskabsretlige regler om stiftelse og kapitalforhøjelse. Så længe rettighederne ikke overføres til andre retssubjekter, opstår der ingen konkurrence mellem forskellige retssubjekter om, hvem der er ejer af aktierne[88].

Der sondres typisk mellem forvaltningsmæssige (organisatoriske) og økonomiske aktionærrettigheder/beføjelser ved beskrivelsen af indholdet i en aktionærposition. Sondringen er ikke klar, idet der kan ligge en betydelig økonomisk værdi i de forvaltningsmæssige beføjelser, ligesom de økonomiske beføjelser har forvaltningsmæssige aspekter[89]. Sondringen er ikke direkte lovfæstet, men kan udledes af ASL § 27[90].

*Forvaltningsmæssige beføjelser* drejer sig om aktionærens indflydelse på forvaltningen (administrationen) af selskabet. Eftersom aktionærer grundlæggende kun udøver deres indflydelse via generalforsamlingen, jf. ASL § 65, stk. 1, angår forvaltningsbeføjelserne alle spørgsmål om, hvordan aktionærerne vil anvende deres stemmeret på generalforsamlingsniveau i selskabet[91]. En akties forvaltningsmæssig beføjelser udgør retten til at møde på generalforsamlingen, jf. ASL § 65, taleretten på generalforsamlingen, jf. ASL § 65, stk. 2, retten til at afgive stemmer ved denne generalforsamling jf. ASL § 67, retten til at møde ved fuldmægtig eller rådgiver, jf. ASL § 66, stk. 1, retten til at indkalde til ekstraordinær generalforsamling, jf. ASL § 70, retten til at få et bestemt emne med på generalforsamlingen, jf. ASL § 71, retten til at anfægte en truffet generalforsamlingsbeslutning i henhold til ASL § 81, retten til granskning, jf. ASL § 86[92], retten til opløsning af selskabet, jf. ASL §

---

87.  Jf. *Bent Ramskov*: Intern selskabsomstrukturering, 2001, s. 75.
88.  Jf. *Hugo P. Martre* i NTS 2001, s. 400.
89.  Jf. *Magnus Aarbakke* i TfR 1993, s. 60.
90.  Se om sondringen mellem forvaltningsmæssige og økonomiske beføjelser: Betænkning nr. 540, 1969, s. 78, *Erik Werlauff & Jørgen Nørgaard*: Vedtægter og aktionæroverenskomster, 1995, s. 52 ff, *Bent Ramskov*: Intern selskabsomstrukturering, 2001, s. 76 ff, *Søren Friis Hansen & Jens Valdemar Krenchel*: Lærebog i selskabsret II, 2000, s. 96, og *Magnus Aarbakke* i TfR 1993, s. 60 ff. Se generelt om aktionærers rettigheder *Åse Koll Lunde m.fl.* i Revisjon og Regnskap 2003/5, s. 24 ff.
91.  Jf. *Erik Werlauff & Jørgen Nørgaard*: Vedtægter og aktionæroverenskomster, 1995, s. 52.
92.  Netop denne aktionærbeføjelse, og særligt herved selve aktionærbegrebet har været genstand for en norsk Høysteretts-dom, jf. Rt. 2000, s. 1792 (Montell-sagen) og det er netop denne dom der har foranlediget den konkrete interesse for problemstillingen hos *Hugo P. Matre* i NTS 2001, s. 395 ff. Sagen omhandlede i korthed spørgsmålet om

*Del IV − Konfrontation*

119, samt retten til søgsmål mod ledelsen på grund af erstatningsansvar, jf. ASL § 144, stk. 3.

Ved siden af de forvaltningsmæssige beføjelser er der til den enkelte aktie knyttet en række *økonomiske beføjelser*. Også de økonomiske beføjelser kan defineres med udgangspunkt i ASL § 27, der angiver eksempler på sådanne økonomiske beføjelser. En aktionærs økonomiske beføjelser kan defineres som retten til at eje eller modtage en efter aktiernes størrelse forholdsmæssig del af selskabsformuen[93]. Herefter omfatter de økonomiske rettigheder alle de måder, hvorpå selskabets midler kan udloddes, jf. ASL § 109, herunder retten til at modtage udbytte på en aktie, retten til at modtage provenu ved selskabets likvidation eller ved en kapitalnedsættelse, retten til at modtage fondsaktier ved en fondsemission, jf. ASL § 29, samt den fortegningsret, der som udgangspunkt tilkommer samtlige aktionærer ved en kapitalforhøjelse, jf. ASL § 30, stk. 1. Det er det selskabsretlige udgangspunkt, at alle aktionærer har lige adgang til de økonomiske beføjelser, jf. ligheds-grundsætningen i ASL § 17. Som en økonomisk beføjelse må tillige ses maskeret udbytte, uanset de skatteretlige konsekvenser[94].

Endelig kan nævnes adgangen til at disponere over selve aktien − *dispositionsbeføjelserne*. Disse beføjelser følger af selve ejendomsretten til aktien[95]. Der er herved begrebsmæssigt ikke tale om udøvelse af en ret i selskabet. Udgangspunktet er i denne henseende, at aktionæren har ret til at sælge, pantsætte, overlade brugsretten til, indgå udbytteaftaler og stemmeretsaftaler vedrørende aktien, jf. ASL § 18[96]. Særligt vedrørende

---

hvorvidt en aktionær der havde fået sine aktier bortskrevet ved nedskrivning af aktie-kapitalen, og som dermed principielt ikke længere er aktionær kan kræve granskning. Høysteretts flertal kom frem til, at granskning kunne kræves i en sådan situation. Baggrunden for dommens resultat findes i hensynet til minoritetsaktionærerne, idet domstolen fandt, at disse ud fra reale grunde måtte beskyttes. Teknisk set blev der herved foretaget en udvidende fortolkning af aktionærbegrebet, idet granskningsbe-stemmelsen i norsk ret direkte foreskriver, at kun aktionærer har dette ret. Se i detaljer om dommen *Hugo P. Matre* i NTS 2001, s. 396 ff, hvor det anføres, at udfaldet i sagen udelukkende havde betydning i forhold til granskningsinstituttet, og ligestillelsen med en aktionær ikke kunne udstrække til at omfatte andre aktionærbeføjelser i selskabet.

93.  Jf. *Erik Werlauff & Jørgen Nørgaard*: Vedtægter og aktionæroverenskomster, 1995, s. 53.
94.  Jf. *Erik Werlauff & Jørgen Nørgaard*: Vedtægter og aktionæroverenskomster, 1995, s. 54.
95.  Jf. *Magnus Aarbakke* i TfR 1993, s. 61 ff. Denne forfatter anser ejendomsretten som en økonomisk beføjelse.
96.  Jf. *Erik Werlauff & Jørgen Nørgaard*: Vedtægter og aktionæroverenskomster, 1995, s. 54.

*pantsætning* kan bemærkes, at de forvaltningsmæssige rettigheder, der er knyttet til aktien, forbliver hos pantsætteren, med mindre andet er aftalt[97]. Der kan gyldigt træffes aftale om, at panthaver kan udnytte stemmeretten på de pantsatte aktier, indtil panthaver er fyldestgjort[98].

Indholdet af det civilretlige aktionærbegreb fremkommer derved indirekte, idet en aktionær kan siges at være den, som udøver de rettigheder og pligter, som er knyttet til en eller flere aktier. Idet råderetten over aktionærbeføjelserne som udgangspunkt ligger hos ejeren af aktierne, kan beskrivelsen forenkles[99]. *Således er en aktionær den, der har ejendomsretten til en eller flere aktier.*[100] *Imidlertid forholder det sig sådan, at det ikke altid er ejeren af en aktie, der kan udnytte en aktionærbeføjelse.* Det er en vigtig erkendelse, at der ikke nødvendigvis er sammenfald mellem ejerskabet til en aktie og udøvelsen af en aktionærbeføjelse[101].

---

97. Se hertil UfR 1968, 766 H, vedrørende stemmeretten.
98. Jf. herom *Søren Friis Hansen & Jens Valdemar Krenchel*: Lærebog i selskabsret II, s. 96.
99. Jf. *Søren Friis Hansen & Jens Valdemar Krenchel*: Lærebog i selskabsret II, 2000, s. 96.
100. Jf. *Hugo P. Martre* i NTS 2001, s. 396.
101. Jf. *Hugo P. Martre* op.cit., men modsat *Magnus Aarbakke* i TfR 1993, s. 59 ff (s. 61), der i stedet anser ejendomsretten til aktien som en af de økonomiske rettigheder som knytter sig til en aktie. På linie med førstnævnte forfatter findes det tilsvarende mere hensigtsmæssigt at anvende ejendomsret som samlebegreb for rådigheden over alle rettigheder og pligter knyttet til en aktie og som ikke er overført til andre eller begrænset på anden måde. Resultatet nås tillige ud fra en fortolkning af den til ASL § 27 svarende regel i norsk ASL. Det konstateres herom, at bestemmelsen trods sin formulering ikke giver anledning til en generel begrebsopfattelse i henseende til aktionærbegrebet, jf. *Hugo P. Martre* i NTS 2001, s. 402, der dog herved tilsyneladende vender sig mod udlægningen hos *Magnus Aarbakke* m.fl.: Aksjeloven og allmennakjseloven, 2000, s. 864. Forfatteren finder, at bestemmelsen på den ene side kan udlægges sådan, at de forvaltningsmæssige rettigheder er de afgørende ved afgørelsen af hvem der er aktionær. På den anden siden kan bestemmelsen udlægges sådan, at de økonomiske beføjelser er afgørende. Denne antagelse støttes på en inddragelse af praksis fra Norges Høysterett. I skattesager har domstolen således ved vurderingen af om ejendomsretten har nogen realitet for den passive aktionær, ikke lagt vægt på de forvaltningsmæssige rettigheder, men derimod lagt vægt på håndteringen af udbytte ved vurderingen af om ejerskabet har været pro forma, jf. Rt 1998, s. 1771, og hertil *Hugo P. Martre* i Revisjon og Regnskap 1999/5, s. 38. På denne baggrund slutter Matre, at Høyesteretts brug af aktionærbegrebet rejser det spørgsmål, om placeringen af de forvaltningsmæssige beføjelser kan anses som et egnet kriterium ved en generel selskabsretlig begrebsfastlæggelse. Uanset dette finder forfatteren, op.cit., s. 403, at det følger af aksjelovens struktur, at begrebet ikke uden videre kan fastlægges på baggrund af en enkelt bestemmelse. Idet der ikke er tale om nogen legaldefinition må begrebet efter forfatterens opfattelse fastlægges konkret fra situation til situation. Synspunktet kan sammenfattes således, at det må vurderes konkret, hvem der har de enkelte rettigheder og pligter. Rettighedshaveren efter denne vurdering vil være aktionær i den aktuelle bestemmelses forstand, i det omfang begrebet benyttes heri. Alternativt kan personen blive ligestillet med en aktionær, uden selv at være aktionær.

*Del IV – Konfrontation*

Hermed adskiller det anvendte aktionærbegreb sig fra den forståelse, som *Hugo P. Martre* lægger til grund[102]. Denne forfatter har således argumenteret for, at selskabslovgivningens særskilte regulering af de forskellige aktionærbeføjelser må indebære, at aktionærbegrebet i civilretlig henseende antager en *funktionel karakter*. Principielt kan det siges, at vilkårene, for at kunne udøve aktionærbeføjelserne, må kunne fastlægges på grundlag af reguleringen af det aktuelle spørgsmål. Aktionærbegrebet kan herved siges at have et forskelligt indhold i forskellige relationer.

En aktionær er ikke nødvendigvis, den som kan udøve en aktionærbeføjelse. Som nævnt kan aktionærbeføjelser i vidt omfang splittes fra en aktie, og det kan være relevant at sondre mellem de rettigheder, der er knyttet til den enkelte aktie, og de rettigheder, som faktisk kan udøves af den aktionær, der ejer aktien[103]. Tilsvarende er ejerskabet i visse henseender ikke uden videre tilstrækkeligt til at udløse en konkret aktionærbeføjelse, jf. eksempelvis kupreglen i ASL § 67, stk. 2. Aktionæren må være ejeren af aktien, og denne ejer vil typisk være i besiddelse af en række centrale forvaltningsmæssige beføjelser[104]. Det må også have formodningen mod sig, at et fuldstændigt sprogligt identisk begreb intradisciplinært i selskabsretten må tillægges forskelligt indhold.

### B) Opsplitning af aktionærbeføjelser

Såvel civilretligt som skatteretligt er det af stor betydning, om aktionærbeføjelser kan deles mellem flere parter. Der kan ligge legitime behov bag et sådant ønske[105]. I tilfælde af splitning af aktionærrettig-

---

102. Jf. NTS 2001, s. 395 ff.
103. Det kan således forekomme, at en aktionær er afskåret fra at udøve en eller flere af de rettigheder, som er knyttet til vedkommendes aktier. Dette gælder eksempelvis, hvis der er aftalt regler om stemmeloft i vedtægterne. Dette medfører imidlertid ikke, at ejeren i sådanne konkrete situationer må fratages aktionærbenævnelsen.
104. Man kan hertil stille det spørgsmål, om en aktieerhverver der ikke er noteret i aktiebogen, jf. ASL § 27 og følgelig ikke kan udnytte de forvaltningsmæssige beføjelser, men dog kan udnytte de økonomiske beføjelser, ikke da må anses som en aktionær førend de forvaltningsmæssige rettigheder kan udøves. Jeg er principielt enig i, at der her klart må være tale om en aktionærposition forud for adgangen til at udnytte de forvaltningsmæssige rettigheder. Dette støtter efter min opfattelse blot ikke synspunktet om aktionærbegrebets relativitet. Derimod er der blot atter tale om det forhold, at betingelserne for at udnytte beføjelserne varierer.
105. Norsk ret indeholdt tidligere et egentligt forbud mod splitning af rettigheder. Forbuddet gled ud af lovgivningen i 1976, jf. *Magnus Aarbakke* i TfR 1993, s. 64.

**Hughes Hubbard & Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached Tax Law and Civil Law. I further certify that I am fluent in both Danish and English, and qualified to translate from Danish to English. My qualifications include fifteen years of experience in foreign language litigation providing legal translations.

Sean Aiello, Contract Attorney

Licensed in NY and Florida only

On the 6 day of June in the year 2022, before me, the undersigned notary public, personally appeared Sean Aiello, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____ Notary Public

VALERIE CAHAN
Notary Public, State of New York
No. 02CA6322480
Qualified in Kings County
Commission Expires June 25, 2023