# Exhibit 117

| From: | Richard Markowitz </O=OEXCH029/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=RMARKOWITZ@ARGREC37> |
|---|---|
| To: | Jérôme LHOTE; John H. van Merkensteijn, III; Adam Larosa; Matthew Stein |
| Sent: | 3/12/2013 5:45:43 PM |
| Subject: | Re: Our call of today |

I so think we need to communicate with Duet that they only use cash settled futures. (I think they should be aware of this, but let's make sure.)

_____

Richard Markowitz
Argre Management LLC
40 West 57th Street
20th Floor
New York, NY 10019

Tel:      (212) 247-2600
Fax:      (212) 247-2753
Mobile: (917) 848-5675

On 3/12/13 3:56 PM, "Jérôme  LHOTE" <jlhote@argremgt.com> wrote:

>fyi
>
>-----Original Message-----
>From: Emilie.MAES@freshfields.com [mailto:Emilie.MAES@freshfields.com]
>Sent: Tuesday, March 12, 2013 1:05 PM
>To: Jérôme LHOTE
>Cc: Matthew Stein; robert.neyt@freshfields.com;
>axel.haelterman@freshfields.com
>Subject: RE: Our call of today
>
>Dear Jérôme,
>
>I refer to our conversation from last week.
>
>The beneficial ownership provision contained in article 106, §4 of the
>Royal Decree implementing the Belgian Income Tax Code 1992 (RD/BITC)
>provides that the withholding tax exemption of article 106, §2 RD/BITC is
>disallowed if the recipient of the dividend, whilst holding (the
>ownership of) the shares in its own name, is under a contractual
>obligation to pay over the dividend income (i.e. the revenue on the
>Belgian shares) to an ultimate beneficiary. This exclusion essentially
>aims at the situation where the holder of the shares has issued share
>certificates to third parties for the account of which he would be
>holding the shares. Such third parties would traditionally either have
>financed the share acquisition or have initially transferred the shares
>to such holder.
>
>The fact that the holder of the shares would have sought external funding
>(leverage) for acquiring the shares, should not impact on its ability to
>claim the withholding tax exemption. Where any such borrowing would take
>the form of a profit participating loan, care should be taken that such

CONFIDENTIAL

>profit participation does not actually lead to an obligation to pay on
>the dividend or a fixed part of it to such lender. Until recently, taking
>the dividend coupon into account as one of the elements in order to
>calculate the profit sharing entitlement of the lender, would not have
>impacted the possibility to claim the withholding tax exemption. Today,
>under the new anti-misuse provision, each situation should be carefully
>reviewed in order to ascertain that such arrangement would not be
>"frustrating" the intent of the legislative provision including
>provisions that do not explicitly refer to a profit sharing entitlement
>based on the received dividends.
>
>Since the exclusion focuses on the obligation to pay over the dividend to
>a third party, it is important that any hedge contract is actually
>functioning as a market value guarantee, and does not imply the paying
>over of the income on the shares. The Hedge should allow the pension to
>obtain the dividend on the shares for its own account, even though,
>obviously, the market value taken into account in the framework of the
>hedge will refer to an expected dividend value on the shares.
>
>Also, the effective ownership of the pension fund over the shares
>(required in article 106, §2 RD/BITC) should, as a rule, imply that the
>acquisition set up (and its financing) as well as the hedge under the
>transaction, are such that the pension fund, after having acquired the
>shares, is legally clearly at liberty to hold on to the shares for an
>undetermined period of time, in such a manner that it has effective
>control over what will eventually happen to these shares. This would
>habitually exclude a financing arrangement that would necessarily lead to
>an obligation to sell the shares at the end of such "closed end"
>financing period. Traditionally this would also, and more generally,
>exclude that at the moment of the acquisition of the shares the pension
>fund immediately enters into a physically settled forward sale.
>
>The analysis of cash settled hedges is different, since a pension fund
>should in principle remain effective legal owner of the underlying assets
>(i.e. the shares and all other assets that it holds) under the terms of
>these derivative instruments. In case of a cash settlement, one party
>pays the other the difference between the market price of the relevant
>underlying asset and the agreed price. However, the underlying assets are
>not actually delivered. Therefore, subject to the case per case review
>presently required under the general anti-misuse provision, entering into
>the cash settled hedge should not lead to the conclusion that the pension
>fund has no effective ownership over the shares and should therefore not
>endanger the application of the exemption contained in article 106, §2
>RD/BITC.
>
>Please do not hesitate to contact us should you require more information
>regarding the above.
>
>Best regards,
>
>Axel - Robert - Emilie
>
>-----Original Message-----
>From: Jérôme LHOTE [mailto:jlhote@argremgt.com]
>Sent: vrijdag 8 maart 2013 16:02
>To: MAES, Emilie
>Cc: Matthew Stein; NEYT, Robert
>Subject: Our call of today
>
>Thank you Emilie for your time. It was very useful and now we have a much
>better understanding of the disposition.
>We would appreciate if you could send us in email your understanding
>ofit, confirming what it addresses and tackles.
>
>Best regards,

CONFIDENTIAL

WH_MDL_00474385

\>
\>Jerome LHOTE
\>Argre Management LLC
\>Tel: +1 212 247 2600
\>Cell: +1 917 640 9365
\>
\>
\>
\>
\>
\>This email is confidential and may well also be legally privileged. If
\>you have received it in error, you are on notice of its status. Please
\>notify us immediately by reply email and then delete this message from
\>your system. Please do not copy it or use it for any purposes, or
\>disclose its contents to any other person: to do so could be a breach of
\>confidence. Thank you for your co-operation. Please contact our IT
\>Helpdesk on +44 (0) 20 7785 2000 or email ITHelpdesk@freshfields.com if
\>you need assistance.
\>
\>
\> Freshfields Bruckhaus Deringer LLP is a limited liability partnership
\>registered in England and Wales with registered number OC334789. It is
\>authorised and regulated by the Solicitors Regulation Authority. In
\>Belgium, it is registered with the RPM/RPR Brussels number 0538 335 152
\>and professional rules are available at www.barreaudebruxelles.be and
\>www.baliebrussel.be. For regulatory information please refer to
\>www.freshfields.com/support/legalnotice.
\>
\> A list of the members (and of the non-members who are designated as
\>partners) of Freshfields Bruckhaus Deringer LLP and their qualifications
\>is available for inspection at its registered office, 65 Fleet Street,
\>London EC4Y 1HS. Any reference to a partner means a member, or a
\>consultant or employee with equivalent standing and qualifications, of
\>Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or
\>entities.
\>

CONFIDENTIAL